NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES LEON THOMAS, | No. C 07-3159 JF (PR) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | |
| D.K. SISTO, Warden, | |
| Respondent. | |

Petitioner, proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On November 18, 2008, the Court granted Petitioner's motion to file an amended petition. On December 30, 2008, the Court denied Petitioner's motion for a stay and ordered Respondent to show cause why the writ should not be granted based on the two claims set forth in the amended petition. Respondent filed an answer addressing the merits of the two claims. Petitioner filed a traverse. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to federal habeas corpus relief and will deny the petition.

//

//

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts and procedural background are taken from the unpublished opinion of the California Court of Appeal:

> Jane Doe I (Doe I) lived by herself in an apartment in Richmond. On February 12, 2002, Doe I returned home from work and then went to bed around 10:00 p.m. She was awakened near 11:30 p.m. by a man who was hitting her shoulder. The man called Doe I a "bitch" and told her to "wake up." When Doe I screamed, the man placed a "black plastic looking" handgun against her head and told her he would shoot if she kept screaming.
>
> The man yanked Doe I from her bed, called her by another woman's name, and demanded "dope and money." When the man realized Doe I was not the woman he thought she was, he said, " 'I can't believe I am in the wrong fuckin' apartment.'" However, instead of leaving, the man dragged Doe I to the living room, placed her face down on the floor, ripped off her pajamas and panties, and tried to rape her from behind. He failed.
>
> The man bound Doe I's hands behind her back and dragged her back to the bedroom. He forced Doe I to her knees, leaned her over the bed, and raped her repeatedly.
>
> When the man was finished, he told Doe I to take a shower. While Doe I was in the shower, she was able to free her hands. She made a break for the door. The man caught Doe I and beat her. He then fled. Doe I called 911.
>
> Doe I was taken to a hospital where a nurse performed a sexual assault examination. The nurse collected vaginal swabs that were delivered to the Contra Costa County crime lab. The lab created a DNA profile for the sperm donor and loaded the profile into a nationwide DNA database. The rapist's profile matched appellant's profile.
>
> The police obtained a blood sample from appellant and provided it to the crime lab. The lab performed another DNA test and confirmed that appellant's profile was "a complete match" to the rapist.
>
> Based on these facts, an information was filed charging appellant with forcible rape (Pen.Code, § 261, subd. (a)(2)[1]), attempted forcible rape ( §§ 261, subd. (a)(2), 664), first degree residential burglary (§§ 459, 460, subd. (a)), making a criminal threat (§ 422), and false imprisonment (§ 236). As is relevant here, the information also alleged the rape took place during the commission of a burglary and involved tying and binding (§§ 667.61, subds., (d)(4) & (e)(6)), and that appellant had three prior strikes (§ 667, subds.(b)-(i)), two prior serious felony convictions (§ 667, subd. (a)(1)), and had served three prior prison terms. (§ 667.5, subd. (b).)
>
> The case proceeded to trial where the prosecution presented the evidence set forth above. In addition, the prosecution presented testimony

---

[1] Unless otherwise indicated, all further section references will be to the Penal Code.

from another woman, Doe II, who said in 1986, appellant had raped her. Appellant was a juvenile at the time.

Appellant testified in his own defense. He denied that he raped Doe I, claiming he was at home with his girlfriend on the night in question. However, he admitted having sex with Doe I earlier that same day. According to appellant, he went to a liquor store on the evening in question where he hoped to sell some cocaine. While at the store, a woman drove up in a car. Appellant approached the woman and asked if she wanted some cocaine. The woman had no money, but she agreed to have sex with appellant in exchange for some of the drug. Appellant and the woman then had sex in the front seat of her car. Appellant testified at trial that Doe I was the woman with whom he had sex. That was why his sperm was in her body.

The jurors apparently rejected this explanation and found appellant guilty on all counts. In a court trial that followed, the court found the enhancement allegations, all three strike allegations, the two prior serious felony convictions, and all three prior prison term allegations to be true.

Subsequently, the court sentenced appellant to 113 years to life in prison.

People v. Thomas, No. A108687, slip op. at 1-3 (Cal. Ct. App. Mar. 30, 2006) (Resp't Ex. 7) (footnote in original).

On March 30, 2006, the California Court of Appeal affirmed the conviction, but reduced Petitioner's sentence to a term of 111 years to life in state prison. (Resp't Ex. 7.) On June 14, 2006, the California Supreme Court denied the petition for review. (Resp't Ex. 9.) Thereafter, petitioner filed two petitions for a writ of habeas corpus in the Contra Costa County Superior Court, which were denied on November 16, 2007 and July 8, 2008 respectively. (Resp't Ex. 12.) His habeas petitions to the California Court of Appeal were denied on August 9, 2007, and August 5, 2008, respectively. (Resp't Exs. 11 & 14.)

**DISCUSSION**

**I.      Standard of Review**

This Court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination

of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Where, as here, the highest state court to consider Petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of Petitioner's claims in an explained opinion is the opinion of the California Court of Appeal. (Resp't Ex. 7.)

## II. **Legal Claim and Analysis**

Petitioner has raised the following two claims for relief: (1) the trial court's evidentiary rulings violated his right to due process; and (2) Section 1108 of the California Evidence Code, allowing evidence of prior sexual offenses to be admitted to show a propensity to commit the charged sexual offense, violates the federal constitutional guarantees of due process and equal protection.

### 1. Evidentiary Rulings

Petitioner claims that the following evidentiary rulings violated his right to due process: (1) the admission of evidence of having committed rape in the past to show that he was more likely to commit the charged rape; (2) the admission of the juvenile adjudication of the prior rape to impeach Petitioner; (3) the admission of evidence that the victim of the prior rape suffered post-traumatic stress; (4) the admission of Petitioner's statements to a juvenile probation officer in connection with the prior rape; (5) the admission of evidence that a semen sample had been taken from the victim of the prior rape; (6) the admission of evidence of Petitioner's possession of a toy gun and evidence of fake hair; (7) the failure to limit the evidence of Petitioner's parole status; and (8) the exclusion of evidence of an expunged felony conviction committed by Jane Doe I, the victim of the charged crimes.

### A. Admission of Evidence

As an initial matter, the United States Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Absent such a ruling from the United States Supreme Court, a federal habeas court cannot find the state court's ruling was an "unreasonable application" of "clearly established federal law" under 28 U.S.C. § 2254(d)(1). Id. (citing Carey v. Musladin, 549 U.S. 70, 77 (2006)). Under Holley, therefore, this Court cannot grant habeas relief under § 2254(d)(1) on Petitioner's claims that the admission of irrelevant and overly prejudicial evidence violated his right to due process. See id. at 1101 n.2 (finding that although trial court's admission of irrelevant and prejudicial evidence violated due process under Ninth Circuit precedent, such admission was not contrary to, or an unreasonable application of, "clearly established Federal law" under § 2254(d)(1) and therefore not grounds for granting federal habeas relief).

Even if federal habeas relief were available on the grounds that the admission of evidence violates due process, the admission of evidence in this case caused no such violation. The due process inquiry is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995). Only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991). In addition, in order to obtain habeas relief on the basis of an erroneous evidentiary ruling, Petitioner must show not only that the error was one of constitutional dimension, but also that it was prejudicial under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). To establish prejudice under Brecht Petitioner must show that the error had "'a substantial and injurious effect' on the verdict.'" Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting Brecht, 507 U.S. at 623).

The Court now addresses each of Petitioner's claims of evidentiary error in turn.

      i.     Evidence of Prior Rape

First, Petitioner claims that the evidence of his prior rape, as a juvenile, of Doe II was inadmissible. The California Court of Appeal described the relevant background regarding the admission of evidence of Petitioner's rape of a woman when he was seventeen years old:

> The prosecution planned to present evidence that in 1986, when appellant was 17, he forcibly raped a 54-year-old woman who was identified as Doe II.
>
> The defense filed motion in limine to exclude the evidence. The defense conceded that evidence of prior sexual misconduct is generally admissible under Evidence Code section 1108.[2] However, the defense argued that evidence of the prior rape should be excluded under Evidence Code section 352.[3] The trial court conducted a hearing on the defense's motion and denied it.
>
> Doe II then testified at trial. She said that on the night in question, she went to bed near 12:30 a.m. A few minutes later, she heard a crash and saw appellant come in through a window. Doe II screamed and ran toward the front door. Appellant caught her. He threatened Doe II with a knife and told her to "shut up." Appellant dragged Doe II back into the bedroom, threw her on the bed, turned her on her stomach, and raped her from behind. Appellant then pushed Doe II into a closet and left.
>
> The rape so traumatized Doe II that she has nightmares to the present and became fearful of African-American men.

(Resp't Ex. 7 at 7-8 (footnote in original).)

Petitioner argues that the evidence should not have been admitted because the prior rape was sixteen years old, was not sufficiently similar to the charged crime, and was unduly prejudicial because of the age of the victim and the trauma to her. Petitioner is correct that the crime was sixteen years old, but, as noted by the California Court of Appeal, Petitioner was incarcerated for ten of those years, which undermines any inference that Petitioner had been leading a "legally blameless life" between the two

---

[2] Evidence Code section 1108, subdivision (a) states, in part, "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

[3] Evidence Code section 352 states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

1  rapes. (Resp't Ex. 7 at 8.) Petitioner is incorrect that the crimes were not similar: in both
2  cases, Petitioner invaded the home of a woman living alone at night while the woman was
3  in bed; he threatened both women with a weapon; and he raped both women from behind
4  while they were on their stomach. (See id. at 9.) Finally, as the California Court of
5  Appeal also noted, while the prior crime was certainly brutal, it was not likely to inflame
6  the prejudice of the jury any more than the details of the charged crime in which there
7  was persuasive evidence that Petitioner was the man who threatened, repeatedly raped,
8  and beat the victim. (See id.) Under these circumstances, the jury could reasonably infer
9  from the evidence of Petitioner's prior rape that he was more likely to commit the charged
10 rape, and thus the admission of the evidence of the prior rape did not violate his right to
11 due process.[4]

12 Petitioner's argument that the evidence of his prior rape was inadmissible under
13 state evidentiary rules does not raise a cognizable bases for federal habeas relief because a
14 state court's evidentiary ruling not subject to federal habeas review unless the ruling
15 violates federal law. See Pulley v. Harris, 465 U.S. 37, 41 (1984). Failure to comply
16 with state rules of evidence is neither a necessary nor a sufficient basis for granting
17 federal habeas relief on due process grounds. Jammal, 926 F.2d at 919.

18                              ii.     Impeachment Evidence

19 Petitioner claims that the trial court erred by allowing the juvenile adjudication for
20 rape in 1987 to be used to impeach Petitioner. After a pre-trial hearing, the trial court
21 ruled that Petitioner could be impeached with his juvenile adjudication for felony rape in
22 1987 and his conviction for attempted robbery in 1996; the use of a conviction for car
23 theft in 1994 was not allowed. (Resp't Ex. 7 at 9.) As explained by the California Court
24 of Appeal, California law allows the use of any crime of "moral turpitude, i.e. a readiness
25 to do evil, including felony rape, to impeach a trial witness. (Id. at 9-10 (citing People v.

---

[4]Petitioner's argument that the admission of prior crime evidence to show propensity, as permitted under California Evidence Codes Section 1108, is unconstitutional is addressed below in Section II.B.

Castro, 38 Cal.3d 301, 314 (1988).) Petitioner does not dispute that his having committed a crime of moral turpitude, such as rape, was relevant to his credibility insofar as it could indicate his willingness to break the law, including committing perjury in his trial testimony. Moreover, as the prior rape was admitted anyway as propensity evidence under California Evidence Code Section 1108, there was no additional prejudice to the defense from allowing the prosecutor also to use the evidence to impeach Petitioner. Allowing the prosecution to use Petitioner's prior rape for impeachment thus did not render the trial fundamentally unfair so as to violate due process.

### iii. Evidence of Prior Victim's Trauma

Petitioner claims that testimony by Jane Doe II that she suffered post-traumatic stress following her rape was inadmissible. The California Court of Appeal denied this claim on the following grounds:

> We need not decide whether the evidence was relevant because any possible error on this ground was harmless. Appellant admitted that he forcibly raped Doe II. Any woman would be traumatized by such a violent act. Appellant could not possibly be prejudiced by testimony that Doe II responded to being raped in a way that was consistent with what any reasonable juror would expect.

(Resp't Ex. 7 at 11.) For the same reasons given by the California Court of Appeal, the admission of the evidence did not either render the trial fundamentally unfair in violation of due process or have a substantial and injurious effect on the verdict so as to be prejudicial under Brecht. The jury already heard Jane Doe II's testimony describing the details of Petitioner forcibly raping her. It would hardly be surprising to a fact-finder that she also suffered post-traumatic stress from that experience. As a result, the admission of testimony that Jane Doe II was traumatized by the rape neither violated due process nor caused prejudice under Brecht.

### iv. Petitioner's Statements to Probation Officer

Petitioner claims that his statements to a juvenile probation officer in 1987 after he admitted raping Jane Doe II were inadmissible. During an interview with the officer, Petitioner said that he did not think he had forcibly raped the victim and that "it was okay

1  that they have sex" because Jane Doe II did not resist.  (Resp't Ex. 7 at 11.)  Petitioner

2  also suggested the act was consensual and that Jane Doe II had seduced him.  (Id.)

3        The California Court of Appeal found Petitioner's statements to the officer

4  relevant based on the following reasoning:

> Appellant defended the current rape charges by contending that the had consensual sex with Doe I earlier on the same day that she was raped by some other person.  Appellant's attempt to characterize his sex act with Doe II as a consensual act case doubt on the veracity of his defense in the current case.  As the People explain, "Because appellant's assertion of consent in 1987 was patently ludicrous, it s more likely that his claim of consent in the instant case was specious as well."  We conclude the testimony in question had a tendency in reason" to prove a fact that was disputed at trial.

(Id. at 12.)  For the reasons explained by the California Court of Appeal, the evidence of Petitioner's statements about the rape of Doe II had a permissible purpose.  Petitioner's belief that when he raped Jane Doe II the sex was consensual and she had seduced him undermined the credibility of his defense in the instant case that Jane Doe I had also seduced him and consented to sex.  As Petitioner's statements to the probation officer were relevant to the instant case, they served a permissible purpose and there was no due process violation.  See Jammal, 926 F.2d at 919-20.

### v.   Semen Sample

Petitioner claims that Jane Doe II's testimony that a semen sample was taken when she went to the hospital after being raped was inadmissible.  When the prosecutor asked Jane Doe II, "Did you eventually go to the hospital?", she answered, "Yes.  The police took me right to the hospital., and I was examined.  They took semen samples, and they dressed my wounds."  (Resp't Ex. 7 at 12.)

The California Court of Appeal found any error in the admission of this evidence to be harmless based on the following reasoning:

> Again, even if were to assume this particular piece of evidence was not directly relevant, there was no possibility of prejudice.  The chain of speculation appellant posits is possible, but it is extremely unlikely.  No party presented evidence that appellant had been identified as the 1986 rapist by DNA evidence, and no evidence was presented that appellant was aware that Doe II underwent a rape examination where semen was collected.  The prosecutor did not mention the point during her closing

>argument and she did not attempt to use the collection of semen from Doe II as evidence that appellant was present in Jane Doe I's apartment.  It is not reasonably probable appellant would have achieved a more favorable result absent the error alleged.

(Id. at 12-13.)

While the evidence that a semen sample had been collected following the rape of Jane Doe II was not relevant to the rape of Jane Doe I, its admission was of marginal importance in the context of the trial as a whole.  It was not part of the prosecutor's case insofar as the prosecutor did not elicit the testimony or reference it in her closing argument.  Petitioner argued before the Court of Appeal that the evidence permitted the jury to speculate that Petitioner ordered Jane Doe I to shower because he had been identified as Jane Doe II's rapist by DNA evidence.[5]  As explained by the Court of Appeal, the jury had no basis for speculating about the evidence in the manner Petitioner suggests.  There was no evidence that the semen was tested for DNA, that Petitioner was identified in the rape of Jane Doe II by his DNA, or that the semen from the rape of Jane Doe II was used to identify Petitioner as the rapist of Jane Doe I.  Rather, as the evidence identifying Petitioner as the rapist of Jane Doe I was obtained from the semen collected after the rape of Jane Doe I, the jury would have little reason to attribute any importance to the semen collected from the examination of Doe II.  Under these circumstances, the testimony by Doe II regarding the semen sample did not render the trial fundamentally unfair in violation of due process or have a substantial injurious effect on the verdict so as to cause prejudice under Brecht.

vi.    Toy gun and disguise

Petitioner claims that the evidence that Petitioner possessed a toy gun and a hat and wig was inadmissible.  Jane Doe I testified that her rapist tried to cover his face and that he threatened her with a "black plastic looking" handgun.  (Resp't Ex. 7 at 13.)  About one month after the rape, the police stopped Petitioner for a traffic violation and

---

[5]Petitioner does not offer an argument in support of this claim here, but the Court assumes the claim is based on the arguments he made in the state courts.

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.07\Thomas159_denyHC.wpd

11

found a pellet handgun that looked like a real gun, and a hat and wig disguise. (Id.) The trial court admitted the evidence over a defense objection, ruling that Petitioner's possession of something that looked like a gun and a possible disguise was relevant. (Id.)

Petitioner argues that the evidence was irrelevant because the toy gun was not identified as the plastic gun the rapist had used, and the disguise was also not connected to the crime. This did not mean that no reasonable inference could reasonably be drawn from the evidence. As explained by the California Court of Appeal, the evidence was relevant to show that Petitioner was the type of person who carries toy guns and disguises, and the jury reasonably thus could have inferred that Petitioner might been the man who used a plastic gun in the course of raping Jane Doe I. (Id. at 14.) The fact that the toy gun and disguise found in Petitioner's car were not actually identified as the ones used in the crime did not preclude the jury from drawing a reasonable inference from the evidence. Consequently, its admission did not violate Petitioner's right to due process.

### vii.    Petitioner's Parole Status

Petitioner claims that the trial court erred by failing "to limit" evidence of his parole status. At trial, defense counsel elicited evidence that Petitioner was on parole at the time of the charged crimes.

The California Court of Appeal found that this claim was waived because the evidence was elicited by the defense, and defense counsel did not object to it or request that it be limited at trial. (Id.) Consequently, this claim is procedurally defaulted from federal habeas review. The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial. See Inthavong v. Lamarque, 420 F.3d 1055, 1058 (9th Cir. 2005); Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004); Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir. 1999). As the California Court of Appeal ruled that Petitioner waived his claim by failing to object at trial to the admission of evidence of his parole status, or even to request that such evidence be limited, the claim is procedurally defaulted from federal habeas review.

viii. Conclusion

The trial court's admission of evidence did not violate Petitioner's right to due process or cause prejudice under the Brecht standard. The state court's denial of this claim was neither contrary to nor an unreasonable application of clearly established federal law.

B. Exclusion of Evidence

Petitioner claims that the trial court "erred" in excluding evidence that Jane Doe I had suffered a prior conviction, which conviction Petitioner wanted to use to impeach the her. Jane Doe I had been convicted for welfare fraud in 2000, and the conviction was thereafter expunged pursuant to California Penal Code Section 1203.4. (Resp't Ex. 2 at 1525, 1602.) Section 1203.4 provides that a defendant who has pleaded guilty, but who has successfully completed his or her probation, may have the conviction set aside and that "he or she shall thereafter be releases from all penalties and disabilities resulting from the offense." (Resp't Ex. 7 at 14, n. 8.) California Penal Code Section 788 further provides that a witness may not be impeached with a felony conviction if "the accusatory pleading against the witness has been dismissed under the provisions of Penal Code Section 1203.4." (Id. at 14, n. 9.) The trial court ruled that because the conviction had been expunged under Section 1203.4, Section 788 did not allow the defense to use it for impeachment. (Id. at 14.)

State courts have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials," which is limited, however, by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments.[6] Holmes v. South Carolina, 547 U.S. 319, 324 (2006). In

---

[6] Petitioner only cites due process in the petition, but in his traverse he claims a violation of his Sixth Amendment right to present a defense and the coextensive right to compulsory process. See Washington v. Texas, 388 U.S. 14, 19 (1967) (the right to compel witness testimony and attendance "is in plain terms the right to present a defense"). As discussed below, the same analysis applies to the claim, whether it is brought under due process or the Sixth Amendment.

The California Court of Appeal only addressed whether the exclusion of this evidence

deciding if the exclusion of evidence violates the due process right to a fair trial or the Sixth Amendment right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004) (citing Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985)). The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based. See Chia, 360 F.3d at 1006; Miller, 757 F.2d 988, 995 (9th Cir. 1985).

The exclusion of Jane Doe I's expunged conviction did not violate Petitioner's right to due process or present a defense. The expunged conviction was not strong evidence that her testimony about the rape lacked credibility. Although it was a crime involving dishonesty, the fact that Jane Doe I had completed probation and had gotten the conviction expunged tended to undermine her general propensity to be dishonest. In addition, even if the conviction would indicate some general dishonesty on the part of Jane Doe I, it did not solve the defense's central problem, namely that there was no credible evidence that she had any motive to lie about Petitioner being her rapist. In addition, the defense was able to challenge the credibility of Jane Doe I's trial testimony more effectively with other evidence, including differences between her testimony at trial and her earlier testimony at the preliminary hearing. (Resp't Ex. 2 at 1572-96.) Under these circumstances, the exclusion of the expunged testimony did not render the trial fundamentally unfair so as to violate due process or his Sixth Amendment right to present a defense. Accordingly, the state court's denial of this claim was neither contrary to nor an unreasonable application of federal law.

---

violated the Confrontation Clause. (Resp't Ex. 7 at 14-15.) Petitioner does not argue here that his rights under the Confrontation Clause were violated, nor did he appear raise that argument in the Court of Appeal. (See Resp't Ex. 4 at 66-68.).

### 2. California Evidence Codes Section 1108

Petitioner claims that California Evidence Code Section 1108, under which evidence of his having raped Jane Doe II was admitted, violates due process because it allows evidence of a prior sexual offense to show the defendant's propensity to commit the charged sexual offense. The California Court of Appeal rejected this claim, citing the California Supreme Court's rejection of this argument in an earlier case. (Resp't Ex. 7 at 15 (citing People v. Falsetta, 21 Cal. 4th 903, 912-22 (1999).)

The United States Supreme Court has left open the question of whether admission of propensity evidence violates due process. Estelle v. McGuire, 502 U.S. 62, 75 n. 5 (1991). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not "clearly established" as required by AEDPA. Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006) (citing 28 U.S.C. § 2254(d)(1)); accord Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (reaffirming Alberni). Moreover, the Court notes that with respect to the analogous federal evidentiary rule, the Ninth Circuit has held that it does not violate due process because, like the California rule, the evidence of the prior offense is still subject to the trial court's balancing test before it is admitted, which provides meaningful review. See United States v. LeMay, 260 F.3d 1018, 1031 (9th Cir. 2001) (addressing Federal Rule of Evidence 414 (allowing evidence of prior sexual offenses to show a propensity to commit the charged sexual offense)). In any event, because the Supreme Court has expressly reserved the question of whether using evidence of prior crimes to show propensity for criminal activity could ever violate due process, the state court's rejection of this claim was not contrary to or an unreasonable application of "clearly established federal law" under 28 U.S.C. Section 2254(d)(1). See Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008).

### CONCLUSION

The petition for writ of habeas corpus is DENIED.

No certificate of appealability is warranted in this case. See Rule 11(a) of the

1  Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on
2  certificate of appealability in same order that denies petition).  Petitioner has failed to
3  make a substantial showing that any of his claims amounted to a denial of his
4  constitutional rights or demonstrate that a reasonable jurist would find this Court's denial
5  of his claims debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).
6     The Clerk shall enter judgment and close the file.
7     IT IS SO ORDERED.
8  Dated: 4/16/10
9                                         JEREMY FOGEL
                                           United States District Judge

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.07\Thomas159_denyHC.wpd

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

CHARLES LEON THOMAS,

    Petitioner,

v.

D.K. SISTO,

    Respondent.

Case Number: CV07-03159 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on ___4/21/10___, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Charles Leon Thomas
J-42134
C.S.P Solano
2100 Peabody Rd.,
Vacaville, CA 95696-4000

Dated: 4/21/10

                          Richard W. Wieking, Clerk
                          By:

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.07\Thomas159_denyHC.wpd